IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | | |
|---|---|---|
| ROBERT SPRUIT, | ) | CIVIL ACTION |
| | ) | |
| Plaintiff, | ) | No. |
| | ) | |
| v. | ) | |
| | ) | |
| HCC/KPM, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT IN CIVIL ACTION

AND NOW, comes the Plaintiff, ROBERT SPRUIT (hereinafter "Plaintiff" or "SPRUIT"), and files his Complaint against the Defendant, HCC/KPM, LLC (hereinafter "Defendant" or "KPM") and says:

## NATURE OF THE CLAIMS

1.     This is an action for monetary damages, pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* (hereinafter the "ADEA") to redress Defendant's unlawful employment practices against Plaintiff, including Defendant's pattern and practice of discrimination and the promulgation of a hostile work environment, intentionally and systematically, on the basis of Plaintiff's age, and in retaliation for Plaintiff's complaints of age-based discrimination.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding Plaintiff's rights under the ADEA.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein occurred in this district.

## PARTIES

4. Plaintiff, SPRUIT, permanent resident of the United States since 2004, and is, and was at all times material, a resident of the State of Pennsylvania.

5. Defendant, KPM, is a Pennsylvania for-profit company that operates in the State of Pennsylvania with its principal place of business in Ford City, Pennsylvania.

6. Defendant is an employer as defined by the laws under which this action is brought and employs the requisite number of employees.

## PROCEDURAL REQUIREMENTS

7. Plaintiff has complied with all statutory prerequisites to filing this action.

8. On or about April 17, 2018, Plaintiff dual-filed a timely claim with the Pennsylvania Human Relations Commission (hereinafter "PHRC") and the Equal Employment Opportunity Commission (hereinafter "EEOC") against Defendant, satisfying the requirements of 42 U.S.C. § 2000e-5(b) and (e) (*See* copy of Charge of Discrimination, attached hereto and incorporated herein as **Exhibit A**).

9. Plaintiff's Charge of Discrimination was filed within three hundred (300) days after the alleged unlawful employment practices occurred.

10. April 19, 2019 the EEOC issued a Notice of Right to Sue. (*See* copy of April 19, 2019 Notice of Right to Sue, attached hereto and incorporated herein as **Exhibit B**).

11. This complaint was filed within ninety (90) days following Plaintiff's receipt of the EEOC's Right to Sue letter.

## FACTUAL ALLEGATIONS

12.     Plaintiff is over the age of forty (40) and as such, falls within a protected classed based on his age.

13.     Plaintiff commenced his employment with Defendant in 2004, and had worked for the parent company, HCC prior thereto. He was thus employed by the Defendant or its predecessor, for approximately twenty-nine (29) years until the date of his wrongful discharge on or about January 25, 2018. At all times material, Plaintiff worked for Defendant at its Armstrong County location at 101 River St., Ford City, Pennsylvania 16226.

14.     Throughout all times material to this action, Plaintiff held the position of "Special Projects Manager."

15.     Plaintiff's job duties consisted of directing and coordinating engineering services and resources to support controls; directing and coordinating production, operations, quality assurance, testing and maintenance; overseeing the research and development of new products and procedures; and supervising and overseeing production and quality control.

16.     While employed by Defendant, Plaintiff satisfactorily performed the requirements of his position.

17.     In 2014, Chris Thoma (Chief Executive Officer) appointed Dieter Daum and Harald Kraft to the position of Technical Director. Shortly thereafter, in May 2014, Plaintiff was approached by his direct supervisor, Sam Kube (President) who suggested that Mr. Daum and Mr. Kraft were "demanding more money," because Plaintiff was "making more money than [them]." Mr. Kube requested Plaintiff take a one-third reduction in his pay, to appease Mr. Daum and Mr. Kraft.

18.     Plaintiff suggested that, because of his age, he didn't mind working less and agreed to a forty percent (40%) reduction in hours, in exchange for a one-third (1/3) reduction in his pay. Thereafter, Plaintiff continued to work in his capacity as "Special Projects Manager" on a part-time basis.

19.     In October 2017, Plaintiff's former direct supervisor, Mr. Kube (President) passed away and new management was established to take over the vacancy left in the wake of Mr. Kube's passing. Specifically, Jakob Scheiffarth (Former Plant Manager) was promoted to President with the understanding that Sam Kube's sons, Dylan Kube and Devin Kube, would follow in succession. To that extent, both Dylan Kube and Devin Kube were provided managerial roles in preparation for their succession.

20.     Following Mr. Kube's passing, Plaintiff experienced an intentional decline in his job duties as Defendant's new management worked to phase out its older employees in favor of "new blood," and younger employees.

21.     Defendant established a pattern and practice of discriminating against older employees throughout the last few years of Plaintiff's employment. Plaintiff witnessed numerous instances where older employees were overlooked for promotional opportunities and job applicants were denied based solely on the applicant's age.

22.     Moreover, Plaintiff experienced age-based discrimination first-hand through offensive and derogatory remarks made about Plaintiff's age. Specifically, David Papenfuss (Manager Controls Division) and Albert Plekker (Former President) made discriminatory comments with regard to Plaintiff's age and continually referenced Plaintiff's age in conversation, suggesting that he was "... really old," and asked Plaintiff "... how long [he] was going to stay on." Plaintiff was also provided the "nickname" of "old man" and "dad."

23. The discriminatory and derogatory comments Plaintiff was subjected to were frequent and constant and permeated the workplace, thereby resulting in a hostile work environment.

24. In December 2017, Plaintiff expressed his concerns to Mr. Scheiffarth and Dylan Kube that he felt as though his position was "... being underutilized," and indicated that he felt as though the company was potentially looking to "push him out."

25. Mr. Scheiffarth and Dylan Kube refused to address Plaintiff's concerns and suggested that all three of them could "... sit down and discuss with [Mr.] Kraft," upon his return from Germany after the Christmas holidays.

26. On January 25, 2018, Plaintiff was called into a meeting room wherein Herald Kraft, Dylan Kube and Jakob Scheiffarth sat. Mr. Scheiffarth stated: "I think you knew this was coming," and proceeded to read out loud a letter of separation, effective immediately. Mr. Scheiffarth incorrectly alleged that Plaintiff's position was being eliminated for a lack of duties associated therewith; however, Plaintiff's job duties were intentionally and systemically removed from him and provided to younger employees following the passing of his former supervisor, Sam Kube, so as to create the necessary justification to terminate his employment based on animus associated with his age.

27. Plaintiff's termination was effectuated due to his age and the stated desire of the Defendant to bring on younger workers.

28. The discrimination Plaintiff was subjected to was perpetuated, in part, by one of Defendant's employees with direct supervisory authority over Plaintiff.

29. Defendant knew or should have known of the discriminatory conduct because its supervisor(s) and members of management observed it and/or participated in it.

30.     Upon notice, Defendant failed to take or effect prompt action to prevent, correct, or remedy the discriminatory conduct.

31.     The effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his age.

32.     The unlawful employment practices complained of in the above-mentioned paragraphs were intentional.

33.     The unlawful employment practices complained of in the above-mentioned paragraphs were done with malice or with reckless indifference to the statutory and/or federally protected rights of Plaintiff.

34.     Plaintiff has been damaged by Defendant's illegal conduct.

35.     Plaintiff has retained the services of undersigned counsel and has agreed to pay said counsel reasonable attorneys' fees.

## COUNT I – AGE-BASED DISCRIMINATION IN VIOLATION OF THE ADEA
### *Robert Spruit v. HCC/KPM, LLC*

36.     Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-35, above.

37.     At all times material, Defendant employed twenty or more employees and qualified as an employer within the meaning of the ADEA.

38.     Defendant engaged in intentional age discrimination in the terms and conditions of the Plaintiff's employment, including, but not limited to, the Plaintiff's termination.

39.     Defendant's conduct violated the ADEA.

40.     Plaintiff has satisfied all statutory prerequisites for the filing of this action.

41.     Defendant's discriminatory conduct, in violation of the ADEA, has caused Plaintiff to suffer a loss of pay, benefits, and prestige for which he is entitled to damages.

42.     Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling him to compensatory damages.

43.     Defendant's actions were willful, knowing and voluntary, and otherwise done with malice and/or reckless indifference for Plaintiff's federal rights, thereby entitling him to punitive damages.

WHEREFORE, Plaintiff, requests this Honorable Court:

(a)     Enter judgment requiring Defendant to pay back wages and back benefits found to be due and owing at the time of trial, front-pay, compensatory damages, including emotional distress damages, in the amount to be proved at trial, punitive damages, and prejudgment interest thereon;

(b)     Grant Plaintiff his costs and an award of reasonable attorneys' fees (including expert witness fees); and

(c)     Award any other and further relief as this Court deems just and proper.


Respectfully submitted,

QUINN LOGUE LLC

By:     _____
        John E. Quinn, Esquire
        *Counsel for Plaintiff*

Date: July 17, 2019